MOEA'I UILIATA, Plaintiff

v.

UIVA TE'O and SI'UFANUA AITU, Defendants

ALAI'ASA FILIFILI, Plaintiff

v.

UIVA TE'O, Defendant

MOEA'I UILIATA, Plaintiff

v.

ALAI'A FILIFILI, CHIEFS OF FALENIU,
SI'UFANUA AITU, and TUIA'ANA MOI, Defendants

LT No. 13-85
LT No. 42-85
LT No.  7-86

High Court of American Samoa
Land & Titles Division

December 12, 1988

Before REES, Associate Justice, TUIAFONO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Togiola T.A. Tulafono
For Defendant Alai'a, Charles Ala'ilima
For Defendants Si'ufanua and Te'o,
Tau'ese P. Sunia
For Defendant Tuia'ana, Albert Mailo

On Motions for Reconsideration and Relief From Judgment:

Moea'i moves for reconsideration of our decision rejecting most of his claim to the land called Mapusaga. [8 A.S.R. 85 (1988).] Tuia'ana also moves for reconsideration, although our decision awarded him all of the land he claimed within the Moea'i survey. Moea'i also makes a motion for relief from the judgment on the ground of new evidence.

We deal first with the two Moea'i motions, then with the Tuia'ana motion.

## I.   The Moea'i Motion for New Trial

Moea'i first asserts that the Court erred "in its judgment that Moea'i failed to prove his family's claim." This is an objection to the trial court's findings of fact. In this case our finding was based on our judgment of the credibility of the claimant's witnesses. Although Moea'i witness Valoaga Moananu provided a helpful summary of the general history of the area, the remainder of the testamentary evidence offered by Moea'i was either irrelevant or unbelievable or both.

The heart of Moea'i's claim was that all nine of the tracts leased to the Church in 1902 or 1903,[1] which the lease identified as belonging to

---

[1] The copy of the lease introduced at trial is an unsigned typewritten version in English that appears to have been prepared by the Church, the Territorial Registrar, or the Secretary of Native Affairs not too long after the lease was made. It is certified as a true copy by the Registrar of Titles, and also contains a certificate by E.M. Gurr, then Secretary of Native Affairs, to the effect that he "faithfully interpreted and explained the terms, conditions and covenants therein contained to the lessors therein named, who stated that they thoroughly understand the same . . . ." It names nine tracts of land as included within Mapusaga and is dated March 17, 1903. Two signed handwritten versions, one in English and one in Samoan, were admitted into evidence after trial without objection. These name ten (not nine) tracts of land and are dated March 6, 1902.

After the lease was signed it was presented to the commandant of the Naval Station for his approval. Certain neighboring chiefs objected, and on April 17, 1902 the chiefs of Faleniu agreed to delete the name of the land called "Sinasina." The typewritten and unsigned 1903 version deletes Sinasina from the list of lands composing Mapusaga. The metes and bounds and the total acreage of Mapusaga (22 acres), however, are identical in both 1902 versions and in the 1903 version. The land the chiefs of Faleniu eventually leased to the Church, in other words, was the

the chiefs of Faleniu, were in fact the property of Moea'i. This claim would require us not only to adopt a strained interpretation of the language of the lease itself, but also to disbelieve the testimony of every other witness on matters such as the circumstances of the signing of the lease and who received the money when the land was sold in 1944. As we pointed out in our original opinion, this position is also inconsistent with the testimony of a former Moea'i titleholder in a 1949 High Court case and with the claims made by the present Moea'i himself in 1966.

To cite just one other example of what seemed like a deliberate attempt to mislead the Court, Moea'i put on an elderly witness to testify that his mother and another female relative were buried on the land. Samoans have traditionally been buried on their family's communal land, and the importance of discussing family gravesites in a Samoan land case is to establish long occupancy and a tradition that the land belongs to the family whose members are buried there. On cross-examination, however, it was revealed that the two people in question were buried in the Mormon cemetery along with scores of other people with no claim to ownership of the land.

Moea'i also observes that the Court's opinion, in contrast to Moea'i's testimony, does not account for each and every one of the nine names of land listed in the 1903 lease --- or, as it now appears, in the 1903 copy of the 1902 lease.

This was a matter that disturbed the Court, and on which the judges themselves asked some questions to witnesses at trial. We believe the disparity between the names by which the various parts of land were called in 1902 and the names used by most parties to the present litigation is due partly to competing traditions within different branches of family groupings. For instance, the grouping containing the Alai'a and Seigafo families was represented in 1902 by Seigafo, in 1944 by Alai'a and Seigafo, and in this litigation by Alai'a. Similarly, the family grouping including Tuia'ana and Magalei was represented in 1902 only

same land they originally agreed to lease in 1902.

110

by Magalei, in 1944 by Tuia'ana and Magalei, and in this lawsuit by Tuia'ana alone. At the hearing on this motion Magalei testified that he and other chiefs of his family who might have had claims to parts of Mapusaga chose instead to defer to Tuia'ana. And yet he also testified that part of the land known to Tuia'ana as "Luale'a" was known within his branch of the family as "Mauga o le Sea." Other similar divergences of opinion within the family groupings that include the four parties to this case could well account for the remaining 1902 names. (We note that, in response to an objection from neighboring landowners, the lessors agreed in 1902 to delete the name of one tract of land from the list of those wholly or partly included in Mapusaga. And yet they did not delete any land area or change the metes and bounds of the area to be leased. See note 1, supra. This suggests that there must have been some difference of opinion even then about the names of the tracts composing Mapusaga.)

It is also possible that other families with historic claims to parts of Mapusaga chose not to press those claims in the present litigation, and that their lands (along with the names thereof) were subsumed within the lands awarded to the four parties herein. Such a result is certainly possible under our land registration statutes, which require land claimants to object within sixty days to the filing of a rival registration or forever hold their peace. If this did happen, it almost certainly had the effect of enlarging rather than reducing the amount of land awarded to Moea'i.

The Court was bound to weigh the evidence and arguments that were actually presented to it by the four parties before the Court. Nobody's case was free from doubt, but Moea'i's was the weakest of the four. In our judgment, the way in which he used all nine of the 1903 names weakened rather than strengthened his credibility.

Finally, Moea'i urges that Tuia'ana "is not capable of owning land under Samoan customs" and that Alai'a "failed to prove by a preponderance of evidence . . . a capacity to own land under Samoan customs." These issues were not raised in the pleadings, although Moea'i knew at the time he filed his pleading that Tuia'ana and Alai'a were among the objectors to his survey. Nor are they mentioned in Moea'i's pre-trial memorandum, despite

111

the Court's clear admonition to counsel to include any disputed issues of law or fact in their pre-trial memoranda. As far as the Court can recall, Alai'a's capacity to own land was not even raised at trial.

Tuia'ana is the bearer of the ava cup for the village council. In some villages the bearer of the ava cup is regarded as a matai, in some not. Tuia'ana was among the matai of Faleniu listed when the matai register was established in 1906; he is listed in the 1944 deed as a chief of Faleniu; and Magalei, the leading matai of Faleniu, testified that he is regarded as a matai and sits as such in the village council. We do not believe the merits of this issue are properly before the Court, but if they were we would hold that Tuia'ana is a matai and can therefore own communal land.

## II.  The Motion for Relief from Judgment

Moea'i has also filed a motion for relief from the judgment under Rule 60(b) of the Territorial Court Rules of Civil Procedure. The motion is grounded in the discovery after trial of a Samoan language version of the 1902 lease. See note 1, supra. Whereas the English version of the lease refers to Mapusaga as including "parts of" Toa and certain other lands, the Samoan version speaks of "vaega itiiti" or "small parts" of these lands. Since the Court's decision appears to include as part of Mapusaga a rather large tract designated Toa, Moea'i argues that it is inconsistent with the Samoan version of the lease.

We assume for the purpose of this motion that the evidence could not have been discovered with due diligence prior to trial. Nevertheless, we deny the motion.

First, it is not clear that "vaega itiiti" necessarily means a small part in an absolute rather than a comparative sense. The Samoan language contains no comparative adjectives. Although the gradual influence of the structure of the English language has resulted in the adoption of phrases roughly equivalent to comparatives, it is probable that the signers of the 1902 lease would have said "Mount Everest is larger than the Matterhorn" by saying: "Mount Everest is large, the Matterhorn is small." (E tele le Mauga Everest, e

112

la'itiiti le Matterhorn.)   The term "vaega itiiti"
may well have meant not "small  parts" but "smaller
parts".[2]   It is beyond dispute that the 1902 lease
describes Mapusaga as including all of  five tracts
of land  and smaller  parts  --- that is, less than
all ---  of  five  other  tracts.   This  is fully
consistent with  the Court's holding in the present
case.

Moreover,  the  exact  wording  of  the Samoan
version is  of dubious  importance in  light of the
fact that the original  version  of  the  lease was
almost certainly  the English version.  The English

---

[2]   See Pratt's Grammar and  Dictionary of
the Samoan Language at 68 (4th ed. 1911):

> The language  has in  recent years, owing
> to the  influence  of  foreign languages,
> undergone some  modification in regard to
> the comparison of adjectives.

Compare id. at 50:

> More usually, and more in accordance
> with pure Samoan idiom is the use of
> two adjectives  pointing a contrast,
> which however  is only implied; as E
> lelei lenei, a e leaga lena, This is
> good but that is bad, not in itself,
> but in comparison with  the other; E
> 'umi lenei,  a e pu'upu'u lena, This
> is longer than that.  [This is long,
> but that is short.]

See also C.C. Marsack, Samoan, at 66 (1962):

> The  comparative  and  superlative
> forms of  adjective do  not exist in
> Samoan;   there   are   no   forms
> equivalent  to  "longer",  "longest",
> or "fatter",  "fattest".  The effect
> of adjectival comparison  has  to be
> obtained in  a roundabout way. . . .
> Even in the  case  of  giant vessels
> like  the  Queen  Mary  and  the
> Aquitania . . . a Samoan  of the old
> school would  say:  Ua tele le Queen
> Mary,  ua  la'itiiti  le  Aquitania.
> Literally the Queen Mary is big, the
> Aquitania is small.

113

document abounds with standard Anglo-American legal terminology and does not bear the earmarks of a translation from the Samoan; the Samoan version contains what seem to be awkward and sometimes incorrect attempts to convey English legal terms. The original English version says "parts of Toa," not "small parts" or even "smaller parts."

Moea'i's point in bringing this motion seems to be that "vaega itiiti" was mistranslated in the English version as "parts." It seems more likely, however, that "parts" was just the word the drafter had in mind and that the newly discovered evidence is itself the mistranslation. Although even an incorrect Samoan translation might be relevant to determining the intentions of the parties, in this case the primary definition of the land is by reference to its exterior boundaries. The lessors would have known what land they were leasing by virtue of having seen and probably walked these boundaries rather than by reference to the description of certain parts of it as "small" or "large" in a legal document. See note 1, _supra_. Moreover, the revised (1903) English version contains a certificate by Secretary Gurr that he had explained it in Samoan to the lessors, who understood and agreed to it. This version, like the 1902 English version, speaks of "parts" of Toa and other lands with no reference to whether the parts are small or large.

Even more important, the Court never made a finding with reference to how much of Toa was inside the 1902 lease and how much was outside. It seems beyond dispute that Toa extended for some distance beyond the lease boundaries on the mountain side. Alai'a testified that the land had also traditionally extended further toward the sea than was reflected in his survey. Nothing in the Court's opinion is inconsistent with the proposition that the Alai'a/Seigafo family in 1902 regarded the land they were leasing to the Church as but a small part of their rightful holdings.

Finally, even if Alai'a's version of Toa were too large to be described under any circumstances as a "vaega itiiti" it would not follow that Moea'i should receive more of Mapusaga than he already has. As we noted in our discussion of Moea'i's motion for reconsideration, it is possible that parts of the land Alai'a now calls Toa were once called other things by various branches of the

114

Alai'a/Seigafo family group.   It is  also possible
that parts  of the Court's award to Alai'a belonged
before 1902 to chiefs whose successors in title did
not  choose  to  appear  in  this  litigation.   We
observed in our original  opinion that   some of the
evidence submitted  by Alai'a with reference to the
southern boundary of Toa,

> although plausible, is rather  thin.  Yet
> it is thicker than the evidence put on by
> . . . Moea'i . . . .  Moea'i concentrated
> on  his  claim  to  own  all Mapusaga and
> therefore put on  no  convincing evidence
> in what is essentially a boundary dispute
> between the strong claim of Alai'a in the
> north  and  west  and  Moea'i's own claim
> (comprising  at  least  Avalua)  in  the
> south.

Slip Opinion at 12, 8 A.S.R.2d at 93.

The injection  of the  vaega itiiti issue does
not cause us to change our opinion on this point.[3]

### III.   The Tuia'ana Motion

Curiously, Tuia'ana also moves for reconsider-
ation.    He  objects  to  the award to Moea'i of a
small piece of land on the  mountainside behind the
tract  awarded  to  Tuia'ana.   Moea'i was the only
claimant  to  this  piece  of  land.    Counsel for
Tuia'ana informs  us that neither he nor his client
knew  that  the  Moea'i  survey  extended  to  the
mountainside and  that this is why Tuia'ana did not
submit his own claim in that area.

This is shocking.  It was  the lawyer's job---
the most basic and obvious part of the lawyer's job
--- to know  what land  was being  litigated in the
case and  to explain this to his client well before
trial.    Nothing  in  the  evidence  or  arguments
adduced by  counsel for  Tuia'ana suggested that he
had any quarrel with the  claim  of  Moea'i  to the
tract of land in question.

---

[3]  Moea'i  has  also  introduced as newly
discovered evidence a map,  not  to  scale, of
Mapusaga  showing  certain landmarks including
church buildings.   This  map  is  in  no way
inconsistent with our original opinion.

If Tuia'ana has a remedy, it does not consist of a motion for new trial, since such a motion for new trial must be based on the evidence that was before the Court. Under certain circumstances a party may move for relief from a judgment, as Moea'i has already done in this case. It seems quite possible, however, that the pursuit of such relief by Tuia'ana will give rise to a conflict between his interests and those of his present attorney.

We strongly urge Tuia'ana to consult another attorney about his rights in this matter.

Conclusion

The motions to reconsider and the motion for relief from judgment are denied.

It is so ordered.